# In the United States Court of Federal Claims

No. 20-529C

(Filed: November 15, 2021)

| | |
|---|---|
| **BOSTON EDISON COMPANY, et al.,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES,** ) <br> ) <br> Defendant, ) <br> ) <br> **and** ) <br> ) <br> **HOLTEC PILGRIM, LLC,** ) <br> ) <br> Defendant-Intervenor. ) <br> ) | Motion by defendant-intervenor for summary judgment; effect of prior decisions; accrual of claims; ripeness; reconsideration denied |

Richard J. Conway, Blank Rome LLP, Washington, D.C., for plaintiff. With him on the briefs were Frederick M. Lowther and Adam Proujansky, Blank Rome LLP, Washington, D.C., and Neven Rabadjija, Deputy General Counsel, Eversource Energy, Boston, Massachusetts.

Daniel Falknor, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the United States. With him on briefs were Brian M. Boyton, Acting Assistant Attorney General, and Martin F. Hockey, Jr., Acting Director, and Lisa L. Donahue, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as Brighton Springer, Office of the General Counsel, United States Department of Energy, Washington, D.C.

Adam K. Israel, Balch & Bingham LLP, Birmingham, Alabama, for defendant-intervenor. With him on the briefs was Alan D. Lovett, Balch & Bingham LLP, Birmingham, Alabama.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Two decades of litigation between plaintiff, Boston Edison Company ("Boston Edison"), and defendant, the United States through the Department of Energy ("DOE" or "the agency"), have not resulted in a final resolution of Boston Edison's claim in this case involving the

agency's contractual obligation to collect, transport, and dispose of spent nuclear fuel ("SNF").[1] Now, defendant-intervenor, Holtec Pilgrim, LLC ("Holtec"), moves the court for summary judgment to reject Boston Edison's claim on grounds that seek to revisit and recast the legal landscape in those decades of litigation. For the reasons set out below, Holtec's motion is DENIED.

## BACKGROUND[2]

Boston Edison entered into a Standard Contract with DOE in 1983 pursuant to the Nuclear Waste Policy Act of 1982. *See Boston Edison VIII*, 152 Fed. Cl. at 360. The Standard Contract "obligated the DOE to collect, transport, and dispose of SNF from Boston Edison's Pilgrim Nuclear Power Station ('Pilgrim')." *Id.* The agency has yet to do so. *Id.*; *see also Boston Edison VII*, 106 Fed. Cl. at 333 ("The government failed to perform at the set time, has not performed since, and is not expected to perform at any foreseeable time in the future.").

In 1999, Boston Edison sold the Pilgrim Nuclear Power Station at Plymouth, Massachusetts to Entergy Nuclear General Company, LLC ("Entergy"). *Boston VIII*, 152 Fed. Cl. at 360. That sale was prompted by the Commonwealth of Massachusetts, which enacted legislation "requir[ing] regulated utilities such as Boston Edison either to sell their electricity generation assets and operations or to functionally separate their generation operations from their transmission and distribution operations." *Boston Edison VI,* 658 F.3d at 1364. Boston Edison chose to sell and pursuant to "the purchase agreement, Boston Edison agreed to pay Entergy tens of millions of dollars for long-term, on-site storage of Pilgrim SNF," the amount of which "was included in Pilgrim's Decommissioning Trust Fund at the time of the sale." *Boston Edison VIII,* 152 Fed. Cl. at 360 (internal citations and quotation marks omitted). In exchange, "Entergy . . . accepted the decommissioning and SNF storage responsibilities for Pilgrim." *Boston Edison VII*, 106 Fed. Cl. at 333. Boston Edison assigned all its "rights and interests in, and obligations under, the Standard Contract" to Entergy, provided that Boston Edison would retain "any and all

---

[1] This is the tenth opinion emanating from this court and the United States Court of Appeals for the Federal Circuit dealing with the dispute. *See Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005) ("*Boston Edison I*"); *Boston Edison Co. v. United States*, 67 Fed. Cl. 63 (2005) ("*Boston Edison II*"); *Boston Edison Co. v. United States*, 80 Fed. Cl. 468 (2008) ("*Boston Edison III*"), *appeal dismissed and remanded*, *Boston Edison Co. v. United States*, 299 Fed. Appx. 956 (Fed. Cir. 2008) ("*Boston Edison IV*"); *Boston Edison Co. v. United States*, 93 Fed. Cl. 105 (2010) ("*Boston Edison V*"), *aff'd in part, rev'd in part, and remanded*, *Boston Edison Co. v. United States*, 658 F.3d 1361 (Fed. Cir. 2011) ("*Boston Edison VI*"); *Boston Edison Co. v. United States*, 106 Fed. Cl. 330 (2012) ("*Boston Edison VII*"); *Entergy Nuclear Generation Co. v. United States*, 130 Fed. Cl. 466 (2017); *Boston Edison Co. v. United States*, 152 Fed. Cl. 358 (2021) ("*Boston Edison VIII*").

[2] The recitations that follow do not constitute findings of fact but rather are recitals attendant to the pending motions and reflect matters drawn from the complaint, the parties' briefs, and records and documents appended to the complaint and briefs, as well as past decisions.

claims of the Assignor related or pertaining to [DOE's] defaults under the Standard Contract accrued as of the sale date, July 13, 1999, whether relating to periods prior to or following July 13, 1999." *Boston Edison VIII*, 152 Fed. Cl. at 360-61 (alterations and quotation marks omitted).

Litigation stemming from DOE's breach of the Standard Contract with Boston Edison has been extensive:

> Boston Edison first filed suit in 1999. Compl. ¶ 23. This court found that DOE breached its contractual obligations to Boston Edison and awarded Boston Edison damages exceeding $40 million for diminution of value "for SNF storage costs included in the decommissioning fund Entergy received from Boston Edison upon the sale of Pilgrim." *Boston Edison III*, 80 Fed. Cl. at 492. On appeal, the United States Court of Appeals for the Federal Circuit reversed in part, stating that Boston Edison could not recover "prospective damages for anticipated future nonperformance . . . in a partial breach case." *Boston Edison VI*, 658 F.3d at 136 (citing *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1376, (2005)). On remand, this court held that . . . Boston Edison retained a "nascent claim for decommissioning costs," *Boston Edison VII*, 106 Fed. Cl. at 342, which would "fully mature . . . on decommissioning," *id.* at 341. The court, therefore, dismissed the case without prejudice. *Id.* at 343. In November 2015, after learning that Entergy planned to cease operations at Pilgrim beginning in June 2019, Boston Edison again filed suit in this court. Compl. ¶¶ 28-29. The court subsequently dismissed Boston Edison's claim without prejudice because Boston Edison's claim was "dependent upon decommissioning at Pilgrim" and those "damages [were] not yet ascertainable." *Entergy Nuclear,* 130 Fed. Cl. at 475.

*Boston Edison VIII*, 152 Fed. Cl. at 361 (some alterations in original).

In late 2018, Entergy submitted a License Transfer Application "in connection with a proposed sale of the Pilgrim facility" to Holtec, who "would assume ownership of and responsibility for Pilgrim and its associated assets and real estate, including its SNF and its Decommissioning Trust Fund." Compl. ¶ 32. "In May 2019, Pilgrim ended power operations and began the decommissioning process." *Boston Edison VIII*, 152 Fed. Cl. at 361. Holtec, as Entergy's successor-in-interest to Pilgrim, "spent over $56 million in 2019 for SNF costs associated with decommissioning." *Id.* According to Boston Edison's complaint, Holtec's expenditures came from the Decommissioning Trust Fund that Boston Edison funded upon the 1999 sale. *Id.* at 364 (citing Compl. ¶ 42). Boston Edison brought the present suit in April 2020, "seeking damages in excess of $40 million, interest, and attorneys' fees, among other relief, stemming from decommissioning activities at Pilgrim." *Id.* at 361. It complains that the money it spent to cover SNF costs as part of the sale to Entergy in 1999 "'would not have been necessary were it not for the DOE's prior breach,' and these 'mitigation costs were directly, proximately and foreseeably' caused by [DOE's] breach." *Id.* (alterations omitted) (quoting Compl. ¶ 42). Boston Edison avers that it has brought suit on behalf of the ratepayers in Massachusetts, who had borne the costs of the special payments it made into the decommissioning fund at the time of the sale to Entergy. *See* Boston Edison Company's Opp'n

3

to Def.-Int. Holtec Pilgrim, LLC's Mot. for Summ. Judgment ("Pl.'s Opp'n"), at 16, ECF No. 45; *see also* Compl. ¶ 7.[3]

Holtec, as defendant-intervenor, filed a motion for summary judgment in September 2021 arguing that it, instead of Boston Edison, "owns all current and future potential spent nuclear fuel damages claims at Pilgrim." Def.-Int.'s Mot. at 6, ECF No. 44; *see also* Hr'g Tr. 45:16-18 (Nov. 2, 2021) ("Any damages incurred after that date Boston Edison is not entitled to because they are not a party to the contract."). To support this contention, Holtec asserts, each in the alternative, that Boston Edison failed to retain any claims based on future decommissioning costs at Pilgrim, that any retained claims are time barred, that any unexpired and retained claims must be limited to $40.03 million (the amount that Boston Edison contributed to the Decommissioning Trust Fund), Def.-Int.'s Mot. at 1, and that any unexpired and retained claims "would not ripen until after a final accounting, after decommissioning, and after DOE takes title to the fund," *id.* at 31. Boston Edison opposed Holtec's motion while the government responded to and concurred with intervenor's motion ("Def.'s Resp."), ECF No. 46. A hearing was held on November 2, 2021. The motion is ready for disposition.

## STANDARDS FOR DECISION

### *A. Summary Judgment*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC"). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[4] A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and must "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A). The court may consider other materials in the record even if not cited by the parties. RCFC 56(c)(3). "[T]he inferences to be drawn . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If the record taken as a whole "could not lead a rational trier of fact to find for the

---

[3] Boston Edison represents that it "will return all damages recovered to its ratepayers; this is why the Massachusetts Attorney General required that Boston Edison retain its breach related claims against the [g]overnment when Pilgrim was sold." Pl.'s Opp'n at 16 (citing *Boston Edison VI,* 658 F.3d at 1366).

[4] Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B. Reconsideration

Because the case remains interlocutory, RCFC 54(b) applies, not RCFC 59(a)(11). Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b); *see Marconi Wireless Tele. Co. v. United States,* 320 U.S. 1, 47-48, (1943) (A court has power "at any time prior to entry of its final judgment . . . to reconsider any portion of its decision and reopen any part of the case."); *John Simmons Co. v. Grier Bros. Co.,* 258 U.S. 82, 88 (1922) ("If [an order is] interlocutory, the court at any time before final decree may modify or rescind it."). The rule reflects the precept that "[a]t an interlocutory stage, the common law provides that the court has power to reconsider its prior decision on any ground consonant with application of the law of the case doctrine." *Wolfchild v. United States,* 68 Fed. Cl. 779, 785 (2005). In such circumstances, "the strict rules governing motions to amend and alter final judgments under Rule 59 do not apply." *Tolliver Grp., Inc. v. United States,* 148 Fed. Cl. 351, 354 (2020) (quoting *Pacific Gas & Elec. Co. v. United States,* 114 Fed. Cl. 146, 148 (2013) (internal quotations and citations omitted)).

"Courts must address reconsideration motions with 'exceptional care.'" *IAP Worldwide Servs., Inc. v. United States*, 141 Fed. Cl. 788, 799 (2019) (quoting *Carter v. United States*, 207 Ct. Cl. 316, 318 (1975)). A motion for reconsideration "is not an opportunity for an unhappy litigant to have an 'additional chance to sway the court.'" *1100 West Ewing Assoc., LLC v. United States*, 139 Fed. Cl. 24, 25 (2018) (quoting *Martin v. United States*, 101 Fed. Cl. 664, 671 (2011) (additional citation omitted)). The moving party "may not merely reassert arguments that 'were previously made and carefully considered by the court.'" *Haggart v. United States*, 133 Fed. Cl. 568, 573 (2017) (quoting *Whispell Foreign Cars, Inc. v. United States*, 106 Fed. Cl. 777, 782 (2012) (additional citations omitted)). A motion for reconsideration is also unavailing where the moving party "raise[s] an issue for the first time that was available to be litigated earlier in the case." *Martin*, 101 Fed. Cl. at 671 (citing *Matthews v. United States*, 73 Fed. Cl. 524, 526 (2006); *Gelco Builders & Burjay Constr. Corp. v. United States*, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966)); *see also Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 243 (2003).

## ANALYSIS

Applying the standards applicable to summary judgment and reconsideration motions, the court cannot say that the facts are undisputed or would entitle Holtec to judgment as a matter of law in light of the prior decisions in this case, nor that Holtec has presented satisfactory evidence meriting reconsideration of those decisions.

### A. Accrual of Claims

Holtec asserts that Boston Edison has not retained any rights to any claims based on decommissioning costs. Holtec contends that Boston Edison could not have retained claims

pertaining to any period after it sold Pilgrim to Entergy because decommissioning claims could not have accrued prior to the sale. Def.-Int.'s Mot. at 20-24. It also asserts that any reading of the purchase and sale agreement providing for accrual of claims conflicts with the contract's plain meaning. *Id.* The court resolved these questions in both *Boston Edison VII* and *Boston Edison VIII*.

In *Boston Edison VII*, the court explained that "a cause of action accrues when all events necessary to state a claim have occurred." 106 Fed. Cl. at 340 (quoting *Chevron U.S.A., Inc. v. United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)). "[I]n a partial-breach setting, the breach and damages have a temporal element. For a partial breach, 'the award is limited to damages incurred as of the time of suit, but subsequent suits may be brought as further damages are incurred.'" *Id.* (ellipses omitted) (quoting *Boston Edison VI*, 658 F.3d at 1366). Applying these principles, the Federal Circuit's decision in *Boston Edison VI* "establish[ed] that Boston Edison . . . suffered an injury springing from the government's pre-transfer breach. Rights flowing from that injury remain Boston Edison's because DOE defaulted before the transfer of the Pilgrim plant to Entergy, and Boston Edison expressly retained rights to "claims 'related or pertaining to [DOE's] defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to *or following* the Closing Date' of the contract with Entergy.'" *Id.* (emphasis in original) (quoting *Boston Edison VI*, 658 F.3d at 1365). "[A]ccrual has a different meaning in different contexts. The use of the word 'accrued' in the contract for sale of Pilgrim should not be read so as to foreclose Boston Edison from asserting a claim for decommissioning costs in the future." *Id.* at 340 (internal citation omitted). While "the damages for Boston Edison's decommissioning responsibilities would be 'recoverable only in subsequent actions commenced after the government's *continued breach of contract* results in further damages,'" *id.* (emphasis in original) (quoting *Boston Edison VI*, 658 F.3d at 1367), Boston Edison's decommissioning claims accrued before the sale to Entergy in 1999 because "the foundational elements of Boston Edison's cause of action for breach of contract were established when DOE first breached the contract," *id.* at 341. "Thus, Boston Edison's claim for decommissioning costs is extant, but it will fully mature only when particular mitigating costs are expended at and on decommissioning." *Id.*

Moreover, in *Boston Edison VIII*, the government asserted the nearly identical argument that Boston Edison's "claim did not accrue prior to the assignment" to Entergy. 152 Fed. Cl. at 363. The court disagreed, explaining that "[w]hen interpreting contracts, courts are instructed to consider the contract 'as a whole' and adopt an interpretation that 'harmonizes and gives meaning to all of the contract's provisions.'" *Id.* (brackets omitted) (quoting *Julius Goldman's Egg City v. United States*, 697 F.2d 1051, 1057-58 (Fed. Cir. 1983)). To adopt the government's position in *Boston Edison VIII*, essentially the same interpretation Holtec advances now, "would render the phrase 'whether relating to periods prior to or following the Closing Date' meaningless." *Id.* (internal quotation marks omitted). The court therefore concluded that "Boston Edison expressly retained rights to these claims in the assignment's reservation language." *Id.* (citing *Boston Edison VII*, 106 Fed. Cl. at 340).[5]

---

[5] Holtec draws an analogy between the purchase and sale agreement in this case and the contract in *Vermont Yankee Nuclear Power Corp. v. Entergy Nuclear Vermont Yankee*, 683 F.3d

6

Additionally, Holtec inadvertently concedes that Boston Edison retained its decommissioning claims. It acknowledges in a hypothetical that under the "related to periods . . . following the Closing Date" language in the purchase and sale agreement, Boston Edison is entitled to recover for mitigation efforts paid before the closing date but not claimed until after the closing date. Def.-Int.'s Mot. at 21. While Holtec invokes a hypothetical progress payment on a dry cask,[6] there is no meaningful difference between the hypothetical example and the facts of this case. In either scenario, hypothetical or real, Boston Edison expended money to mitigate DOE's breach, and the damages resulting from that mitigation-related expense were not ascertainable until after the closing date and "after the government's *continued breach of contract* result[ed] in further damages." *Boston Edison VII*, 106 Fed. Cl. at 340 (emphasis in original) (quoting *Boston Edison VI*, 658 F.3d at 1367).

Finally, Holtec reveals that, at least as it pertains to the question of claim accrual, its motion for summary judgment is in reality one for reconsideration of decisions in the history of this case that held that Boston Edison had claims to decommissioning costs. Def.-Int.'s Mot. at 23-24. The only ground that Holtec raises to support reconsideration doctrine is clear error. *Id.* at 24. The court has previously reaffirmed its pertinent decisions in this case, and it declines to grant reconsideration. And, insofar as Holtec challenges Federal Circuit precedent, *see* Def.-Int.'s Reply at 2, this court "has no power or authority to deviate from the mandate issued by an appellate court," *Lost Tree Village Corp. v. United States*, 115 Fed. Cl. 219, 226 (2014) (citing *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014)).

### B. Statute of Limitations

Holtec sequentially argues that any claims retained in 1999 are barred by the court's six-year statute of limitations. Def.-Int.'s Mot. at 25 (citing 28 U.S.C. § 2501). The court addressed this issue in *Boston Edison VII*, where it held that "the statute of limitations will not begin to run on Boston Edison's claim until the time the corresponding damages are actually incurred." 106 Fed. Cl. at 343 (citing *Indiana Michigan Power Co.*, 422 F.3d at 1378). Treating Holtec's argument as a reconsideration motion, it has not met its burden to persuade the court to revise its reasoning that "a partial breach has two necessary accrual events. The first is the breach. The second is the incurring of actual present damages from the breach. When the word 'accrual' or

---

1330 (Fed. Cir. 2012), where the appellate court held that the seller had not retained a claim as to a one-time fee despite contractual language disputedly to the contrary. Def.-Int.'s Mot. at 22. In *Vermont Yankee*, the Federal Circuit held that there were no claims that could be said to "relate to the one-time fee." 683 F.3d at 1343. The circumstances at hand in this case are different; Boston Edison's claims relate to DOE's continuing breach.

[6] "If Boston Edison had engaged in true mitigation of DOE's breach prior to the closing—a progress payment on a dry cask, for example—then that might well constitute a claim against DOE that had 'accrued as of the Closing Date.' If that cask was not to be loaded or used at Pilgrim until after closing, however, then it would 'relate to periods . . . following the Closing Date,' and the [purchase and sale agreement] terms would make clear that Boston Edison had not relinquished or transferred a claim for such a cask progress payment by virtue of that fact." Def.-Int.'s Mot. at 21.

'accrue' is used in partial-breach cases, it typically connotes that both the first and the second events have occurred." *Id.* at 340 (citing *Yankee Atomic Elec. Co. v. United States*, 533 F.3d 1268, 1282 (Fed. Cir. 2008), and *Tennessee Valley Auth. v. United States*, 60 Fed. Cl. 665, 678 (2004)).  Here, the statute of limitations did *not* begin to run in 1999 when Boston Edison added funds to the Decommissioning Trust Fund based on DOE's then-present breach and in anticipation of DOE's future breach.  Rather, it began once decommissioning started and DOE's breach resulted in damages in the form of money being expended on SNF from the Decommissioning Trust Fund.  Because decommissioning of Pilgrim did not begin until 2019, Boston Edison's claims for damages from 2019 until the time the suit was filed in 2020 are within the court's six-year statute of limitations.

### C. Ripeness

Holtec alternatively contends that if Boston Edison retained any claims after the 1999 purchase and sale agreement that are not time-barred, then such claims are not ripe until after decommissioning is completed.  Def.-Int.'s Mot. at 30-31.  In essence, intervenor's argument is that Boston Edison may not make use of the doctrine of partial breach and must instead wait to bring a claim for total breach.  While the court has not disposed of this identical question, it has addressed the underlying issue.

In *Boston Edison VIII*, the government moved to dismiss Boston Edison's suit for failure to state a claim, asserting that plaintiff's diminution-in-value theory of damages had been "previously litigated and rejected by the Federal Circuit" in *Boston Edison VI*.  152 Fed. Cl. at 364 (alterations omitted).  The court explained that the Federal Circuit's decision in *Boston Edison VI* "meant that Boston Edison could not bring its SNF claim at that time, not that Boston Edison could never bring an SNF claim."  *Id.*  It continued, "Boston Edison's claim for decommissioning costs will fully mature only when particular mitigating costs are expended at and on decommissioning."  *Id.* (elipses omitted) (citing *Boston Edison VII*, 106 Fed. Cl. at 341).  The court then concluded "that Boston Edison ha[d] pled facts sufficient to state a claim."  *Id.* *I.e.*,

> Boston Edison, in its complaint, alleges that it paid over $40 million at the time of the sale into the Decommissioning Trust Fund, and that Holtec, as a part of Pilgrim's decommissioning, has already spent over $56 million from the fund.  *See, e.g.*, Compl. ¶ 42.  These facts are sufficient to state a claim that Boston Edison is entitled to damages and survive the government's motion to dismiss.

*Id.*  Implicit in the court's holding—that Boston Edison had pled sufficient facts to state a claim upon which relief can be granted—is the decision that Boston Edison's claims pertaining to decommissioning expenditures related to SNF become ripe as they are expended.  *See Boston Edison VII*, 106 Fed. Cl. at 340 ("In broadest terms, 'a cause of action accrues when all events necessary to state a claim have occurred.'") (citing *Chevron*, 923 F.2d at 834); *also compare Acrrue*, Black's Law Dictionary (8th ed. 1999) ("The term 'accrue' in the context of a cause of action means to arrive, to commence, to come into existence, or to become a present enforceable demand or right." (citing 2 Ann Taylor Schwin, *California Affirmative Defenses* §

25:3, at 17-18 (2d ed. 1996)) *with Ripeness*, BLACK'S LAW DICTIONARY ("The requirement that this circumstance must exist before a court will decide a controversy.").[7]

This is consistent with *Indiana Michigan*, which held that instead of seeking damages based on speculative, anticipated future injury, plaintiffs could bring a claim for partial breach as fresh damages are incurred. 422 F.3d at 1378. Additionally, in *Boston Edison VI*, the Federal Circuit explained that "[t]he purpose of allowing a series of recoveries for partial breach, as opposed to a single recovery for total breach, is to avoid speculation about the quantum of future damages." 658 F.3d at 1367 (citing *Restatement (Second) of Contracts* § 243, cmt. e). To require Boston Edison to wait until after *all* decommissioning would be a bar higher than that set by the Federal Circuit, which contemplated and sanctioned ongoing and recurring suits for partial breach as damages are incurred.

Because Holtec's alternative would conflict with binding precedent, the court rejects its assertion that Boston Edison's claims are unripe.

### *D. Limitation of Damages*

Holtec argues in yet another alternative that "even if the [c]ourt decided that Boston Edison's claims are viable, [it] should limit Boston Edison's recovery to the $40.03 million that [it] previously determined was the proper measure of Boston Edison's damages." Def.-Int.'s Mot. at 26; *see also* Hr'g Tr. 22:18-22 (arguing that "the [c]ourt should and necessarily must" limit Boston Edison's damages to the amount "that it deposited into the [D]ecommissioning [T]rust [F]und"). Boston Edison responds that the sum of $40.03 million identified in prior decisions in this case cannot be the basis for calculating damages because damages may not be ascertained until they are actually incurred and the speculation of the parties to the purchase and sale agreement cannot govern in place of actual damages. Pl.'s Opp'n. at 12-13 (citing *Boston Edison VI*, 658 F.3d at 1366-67). The court concludes that the question of damages is premature in a motion for summary judgment that predates fact discovery. *See Tennessee Valley Auth.,* 60 Fed. Cl. at 675-76 ("Because the government has had no opportunity to conduct discovery specifically related to TVA's allegations of damages, the [c]ourt cannot determine that no genuine dispute of material fact exists as to the amount of those damages or that TVA is entitled to those damages as a matter of law. TVA's motion for summary judgment must, accordingly, be denied insofar as it requests an award of damages, and an appropriate factual record as to TVA's damages must be developed through discovery and then trial."). Without the record that discovery and trial would provide, the court cannot say there is no factual dispute over the extent of Boston Edison's damages. Therefore, the court must reject Holtec's argument in this alternative that Boston Edison's damages should be limited to $40.03 million at this stage of the litigation.

---

[7] Again, as the court stated in *Boston Edison VII,* "accrue" and "accrual" may have "different meaning in different contexts," such as in a contract setting (holding that Boston Edison's claim had accrued in 1999 even if not ripe until decommissioning) contrasted to a jurisdictional setting. 106 Fed. Cl. at 340.

## CONCLUSION

For the foregoing reasons, Holtec's motion for summary judgment is DENIED. The parties shall continue to fulfill their discovery obligations under the schedule previously set by the court.

It is so **ORDERED**.

                                                s/ Charles F. Lettow
                                                Charles F. Lettow
                                                Senior Judge