# In the United States Court of Federal Claims

No. 20-529

(Filed: February 3, 2022)

| | |
|---|---|
| **BOSTON EDISON COMPANY, et al.**, | Discovery disputes; reasonable search for responsive documents; justification for redactions |
| Plaintiff, | |
| v. | |
| **UNITED STATES**, | |
| Defendant, | |
| and | |
| **HOLTEC PILGRIM, LLC**, | |
| Defendant-Intervenor. | |

Richard J. Conway, Blank Rome LLP, Washington, D.C., for plaintiff.  With him on the briefs were Frederick M. Lowther and Adam Proujansky, Blank Rome LLP, Washington, D.C., and Neven Rabadjija, Deputy General Counsel, Eversource Energy, Boston, Massachusetts.

Daniel Falknor, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the United States.  With him were Brian M. Boyton, Acting Assistant Attorney General, and Martin F. Hockey, Jr., Acting Director, and Lisa L. Donahue, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as Brighton Springer, Office of the General Counsel, United States Department of Energy, Washington, D.C.

Adam K. Israel, Balch & Bingham LLP, Birmingham, Alabama, for defendant-intervenor.  With him on the brief was Alan D. Lovett, Balch & Bingham LLP, Birmingham, Alabama.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Pending before the court is plaintiff Boston Edison Company's ("Boston Edison") motion to compel defendant-intervenor Holtec Pilgrim, LLC ("Holtec") to produce certain documents

that are assertedly responsive to several requests for production.  *See* Pl.'s Mot. to Compel Production of Documents ("Pl.'s Mot."), ECF No. 60.  Boston Edison sets forth two categories of documents that it argues should have been included in Holtec's document production and cites one produced document that allegedly contains improper redactions.  *Id.* at 2.  Holtec advances two objections to plaintiff's motion: namely, that it has already produced all known responsive documents following a reasonable search and that the redacted portions of one of the requested documents are irrelevant to the present litigation.  Def.-Int.'s Opp'n to Pl.'s Mot. to Compel at 8-12 ("Def.-Int's Opp'n"), ECF No. 62.  The matter is fully briefed and ready for disposition.  *See* Pl.'s Reply, ECF No. 63.  Boston Edison's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The present motion to compel arises amid decades of litigation between Boston Edison and the federal government over the Department of Energy's contractual obligation to assist proprietors of nuclear power facilities with the management and disposal of spent nuclear fuel ("SNF").  *See Boston Edison Co. v. United States*, No. 20-529C ___, Fed. Cl. ___, 2021 WL 5298268, at *1-3 (Fed. Cl. Nov. 15, 2021).  "In 1999, Boston Edison sold the Pilgrim Nuclear Power Station at Plymouth, Massachusetts to Entergy Nuclear General Company, LLC ('Entergy')."  *Id.* at *1.  In that transaction, Boston Edison "assigned all its 'rights and interests in, and obligations under, the Standard Contract' to Entergy," with the exception of certain pre-sale breach of contract claims against the government.  *Id.* (citation omitted).  Considerably later, in 2018, after the Pilgrim Nuclear Power Station("Pilgrim") ceased operation, Entergy in turn sold the Pilgrim Power Station to Holtec, "who 'would assume ownership of and responsibility for Pilgrim and its associated assets and real estate, including its SNF and its Decommissioning Trust Fund.'"  *Id.* at *2 (citation omitted).

Boston Edison propounded requests for production to Holtec in August 2021, to which Holtec responded in October 2021 by producing some responsive documents.  Pl.'s Mot. at 3-4.  Unsatisfied with this production, Boston Edison sent Holtec a letter in December 2021 requesting further production.  *Id.* at 4.  First, it asserted that Holtec "did not produce any documents analyzing why the expenditures reflected in [the produced] documents were needed for SNF maintenance at the Pilgrim plant, or any documents concerning how those actual Pilgrim expenditures relate to prior estimates of SNF expenditures for Pilgrim before the breach of the Standard Contract or the sale of Pilgrim."  *Id.*  Second, Boston Edison's letter

> noted that Holtec did not produce documents reflecting forecasts, budgets and analyses prepared by Boston Edison, Entergy or Holtec, during their respective ownerships of the Pilgrim plant, for spent nuclear fuel storage, maintenance and/or disposal costs—including Boston Edison's estimates, prior to the sale, of future SNF costs, which were included among the documents transferred from Boston Edison to the new owner of Pilgrim after the sale and now must be in Holtec's possession.

*Id.*  Further, Boston Edison requested that Holtec supplement its production of a redacted version of the purchase and sale agreement between Holtec and Entergy with an unredacted version.  *Id.* at 4-5.

In a telephone call between counsel for Boston Edison and Holtec in December 2021, counsel for Holtec told Boston Edison that Holtec "was searching for any documents that fell into the [first] two categories of documents and would produce any additional documents it was able to locate." Def.-Int.'s Opp'n at 5. It asserted, however, that it would not produce an unredacted purchase and sale agreement because it "contained competitively sensitive commercial terms" and "was irrelevant to the claims and defenses in this case." *Id.* In early January 2022, Holtec made another production of 610 documents, totaling 13,502 pages. *See* Pl.'s Mot. at 5; Def.-Int.'s Opp'n at 6. The next day, Boston Edison filed the present motion. *See generally* Pl.'s Mot. After that motion was filed, Holtec made two more productions of 4,454 and 599 pages respectively. Def.-Int.'s Opp'n at 6. Holtec represents that its document production now totals 29,947 pages. *Id.* at 7. It further avers that it "is unaware of any additional documents that it has not collected for review and production," but that "it will produce any additional responsive documents it locates in the course of producing documents responsive to the document requests that the [g]overnment recently served." *Id.*

## STANDARDS FOR DECISION

"Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). "Accordingly, resolution of a motion to compel discovery is committed to that discretion." *3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 109 (2019) (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986)). When deciding motions to compel, the "court must balance potentially conflicting goals," *Petro-Hunt, L.L.C. v. United States*, 114 Fed. Cl. 143, 144 (2013), with the understanding that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

## ANALYSIS

Respecting the various SNF cost-and-estimate documents that Boston Edison identifies in its first two sets of document requests, its motion relies on the logical assumption that because the Pilgrim nuclear power plant "is required to continually provide information to the [Nuclear Regulatory Commission] regarding expenditures and estimates concerning SNF maintenance and the Decommissioning Trust Fund," Holtec must have the desired documents in its possession. Pl.'s Mot. at 6-7. From that assumption, Boston Edison contends that one may not credit Holtec's assertion that it has produced every known, responsive document in its possession. *Id.* at 7. Holtec counters, as it explained to Boston Edison before the present motion was filed, that it "is unaware of any additional documents that it has not collected for review and production." Def.-Int.'s Opp'n at 2. It also promises that "it will produce any additional responsive documents it locates in the course of producing documents responsive to the document requests that the [g]overnment recently served." *Id.*

In considering plaintiff's motion to compel, the question is whether "at the *present* time and with the *present* facts," Boston Edison has "shown with enough particularity that [it is] entitled to [the desired] discovery." *3rd Eye*, 143 Fed. Cl. at 112. Factors to consider include the documents already produced and the movant's proposed rationale for requesting additional

3

documents. *See id.* at 110-12 (declining to compel production of source code where movants had already received "approximately 150,000 pages of documents" and source code was "not the only means [of] determining functionality" in movants' patent infringement case). It is also important to take account of whether there will be further opportunities for discovery should it prove necessary. *See id.* at 111 (determining that "perhaps the plaintiffs could show a particularized and good faith basis for the source code discovery that they seek" after they make use of the documents that they had already obtained to narrow the scope of their claims).

Here, the court notes that very recently the parties jointly moved for an extension of the discovery deadline—which the court granted, *see* Order of January 28, 2022, ECF No. 65— based in part on the fact that Holtec had produced "approximately 30,000 pages of responsive documents" in addition to "2,729,251 pages of materials" produced by the government. Joint Mot. for Extension of Discovery at 1-2, ECF No. 64. Even assuming that these millions of pages do not contain anything to respond to Boston Edison's SNF cost, budget, and forecast questions, Holtec has represented to the court throughout its opposition brief that it will make further productions if it discovers additional responsive documents as it responds to pending requests for production from the government. *See* Def.-Int.'s Opp'n at 2, 7, and 11; *see also* Def.-Int.'s Responses to Pl.'s First Set of Requests for Production at 3, ECF No. 62-3 (committing to supplement its productions if Holtec "obtains additional responsive information"). At this time and in light of the volume of documents produced to Boston Edison, the court determines that Boston Edison has not shown with particularity that it is now entitled to the relief that it requests in its motion to compel as to the cost-and-estimate sets of documents that it describes. A motion to compel may prove necessary and warranted after it has seen what supplemental productions occur once Holtec responds further and as Boston Edison reviews the millions of pages of production already available to it.

As to the purchase and sale agreement between Holtec and Entergy, Boston Edison contests Holtec's objection that relevancy shields Holtec from producing the unredacted agreement. Pl.'s Mot. at 8-9. Boston Edison argues that the scope of what is relevant is broader in the context of discovery than for admissibility at trial, *i.e.*, "relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 8 (quoting *Evergreen Trading, LLC ex rel. Nussdorf*, 80 Fed. Cl. 122, 144 (2007)). Boston Edison reasons that the unredacted purchase and sale agreement between Holtec and Entergy is relevant for discovery purposes because it could "shed light on Holtec's contractual arrangements with Entergy, including arrangements pertaining not only to the ownership of the plant itself, but also any claim that Holtec may assert against the [g]overnment, the status of the Decommissioning Trust Fund, and the current possession and control of documents relating to the case." *Id.* It also argues that redactions of responsive materials may only be permitted for privilege, not relevancy. *Id.* at 8-9 (citing *Evergreen Trading*, 80 Fed. Cl. at 145).

Holtec responds that "[t]he portions of that agreement that relate to assignment of claims against the [g]overnment for breach of the Standard Contract are not redacted," and that "the redacted portions of the [agreement] do not contain any provisions related to Holtec Pilgrim's responsibility for spent nuclear fuel management or the ownership of any spent nuclear fuel claims against the [g]overnment." Def.-Int.'s Opp'n at 11. Boston Edison resists these

relevancy arguments, focusing on how the redacted sections of the purchase and sale agreement could be "relevant to whether Holtec obtained some, all, or none of Entergy's SNF claims in the sale," and "whether there are any restrictions on Holtec's use of the decommissioning trust fund to pay for SNF costs." Pl.'s Reply at 9-10. Plaintiff also raises the possibility that the redacted portions of the agreement could be relevant to "whether Holtec has a contractual right to obtain . . . documents from Entergy" that could be pertinent to Boston Edison's case. *Id.* at 10.[1]

In *Thales Visionix, Inc. v. United States*, the court declined to compel production of the unredacted version of a previously produced document because the movant had "not explain[ed] why the redacted information should be produced," the redacted portions were related to products not accused of patent infringement in the movant's patent infringement case, and the request would place a disproportionate burden on the producing party. 149 Fed. Cl. 38, 62-64 (2020). Conversely, in *United Affiliates Corp. v. United States*, the court granted a motion to compel discovery because documents pre-dating the government's takings decision could confirm the character of the government's action and because the movants had agreed to narrow the scope of their request to reduce the burden on the government to make the productions. 147 Fed. Cl. 412, 418-19 (2020). Unlike the movant in *Thales*, Boston Edison has explained why it needs the unredacted purchase and sale agreement—to discover the nature of Holtec's contractual relationship with Entergy, the nature of any claims against the government that Holtec may have derived from Entergy, and the possession of other potentially relevant documents—and the agreement itself is directly relevant to the larger scope of Boston Edison's claims. Moreover, unlike *Thales*, there would not be a proportionality problem because Boston Edison requests a single unredacted document. Like the narrow document production requested in *United Affiliates*, producing an unredacted document does not present a burden for Holtec.

## CONCLUSION

Because Boston Edison has not now demonstrated a present and particular need for further documents requested regarding costs and estimates, its motion to compel is DENIED in part. However, its motion is GRANTED insofar as it pertains to production of the unredacted purchase and sale agreement. Holtec shall produce the unredacted agreement within 14 days of the date of this opinion and order.

It is so **ORDERED**.

s/ Charles F. Lettow  
Charles F. Lettow  
Senior Judge

---

[1] A protective order is in place to secure proprietary and confidential information. *See* Order of October 18, 2021, ECF No. 51.